UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

CRIMINAL ACTION NO. 05-04

UNITED STATES OF AMERICA                                                              PLAINTIFF

VS.                                          **OPINION AND ORDER**

ULYSSES BRANCH, III,                                                                        DEFENDANT

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the Government's Objections (Rec. No. 23) to the Magistrate's Report and Recommendation which recommends granting the Motion to Suppress of the Defendant Ulysses Branch, III ("Branch). For the following reasons, the Court SUSTAINS the Government's Objections and DENIES the Motion to Suppress (Rec. No. 13).

**I.    FACTS.**

After having reviewed Branch's Motion to Suppress, the Government's response, the transcript of the hearing on the motion and the videotape of the incident in question, the Government's objections to the Magistrate Judge's Report and Recommendation and the Branch's response to the same, the Court adopts all of the facts recited in the Magistrate Judge's Report and Recommendation except one.

At the hearing on this issue before this Court, the Government disputed the Magistrate Judge's finding that, upon approaching the Defendant's car, Officer Charles asked Branch to put his hands on the steering wheel. Having reviewed the transcript of the hearing before the Magistrate Judge and the videotape of this matter, the Court finds that Officer Charles did not ask Branch to put

his hands on the steering wheel but instead asked to see Branch's hands.

**II.     ANALYSIS.**

An encounter rises to the level of a Fourth Amendment "seizure," when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  Here, an objective person in Branch's situation would not have felt free to leave from the moment that Officer Charles asked Branch to see his hands.  Thus, Branch was "seized" for Fourth Amendment purposes at that moment.  The government does not dispute this.  Up until the moment that Officer Charles asked to see Branch's hands, however, the encounter between Branch and the officer was consensual.

The Court must evaluate the legality of an investigatory stop by making a two-part assessment of its reasonableness.  *United States v. Martin*, 289 F.3d 392, 396 (6th Cir. 2002). "First, the Court must determine whether there was a proper basis to stop the individual based upon the officer's awareness of specific and articulable facts which gave rise to a reasonable suspicion." *Id.* (quotation and citations omitted).  "Second, the Court must evaluate whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Id.*

Thus, the Court must now determine whether Officer Charles had sufficient suspicion to justify asking Branch to see his hands.  In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that officers have the authority under the Fourth Amendment to stop and temporarily detain citizens with only reasonable suspicion to justify the stop.  "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity .

. . ." *United States v. Cortez*, 449 U.S. 411, 417 (1981).

At the moment that the Officer Charles asked to see Branch's hands, he knew the following facts: 1) an anonymous caller had reported that a dark green Pontiac Bonneville parked in the Wendy's parking lot at 184 Versailles Rd., Frankfort, Ky, bearing license plate number 184-LCM had unidentified "drugs" inside; 2) when Officer Charles arrived at the parking lot approximately 9 minutes after receiving the tip, he saw a car matching the description of the tip in the Wendy's parking lot with three individuals inside; and 3) while the officer was walking toward the car, he saw the individual in the driver's seat, Branch, lean down to his left toward the area of the driver's side door and raise back up.

All parties recognize that the anonymous tip alone would not support reasonable suspicion. *See Florida v. J.L.*, 529 U.S. 266 (2000). Here, however, the anonymous tip was combined with Branch leaning down into the floorboard area of the car upon the officer's approach. Officer Charles testified that, as a result of this movement, he "wasn't aware if [Branch] was hiding a weapon or not, or if he was hiding drugs." (Rec. No. 19, Suppression Hr'g Tr. at 15). He stated that he asked to see Branch's hands "[f]or officer safety" and that he kept his eyes "trained on" Branch while approaching the car. (Rec. No. 19, Suppression Hr'g Tr. at 16, 33). "When reviewing whether reasonable suspicion for a stop exists, this court must give 'due weight' to an officer's determination." *United States v. Marxen*, 410 F.3d 326, 331 (6th Cir. 2005)(citation omitted). "[A]n officer's specialized training and experience may permit him to make inferences from and deductions about the cumulative information available to him that might well elude an untrained person." *Id.* at 331-32 (quotation omitted).

Here, the anonymous tip and Branch's leaning down into the floorboard upon the officer's

3

approach was sufficient information to support a reasonable suspicion that Branch was hiding a weapon or drugs. Given this reasonable suspicion, the officer's simple request to see Branch's hands was the most minimal degree of intrusion into the Branch's personal security and was reasonably related in scope to securing the officer's safety. This is not a case where the seizure consisted of a full search or even a frisk or pat down. Here, the officer simply asked to see Branch's hands. With this request, Officer Charles did not violate Branch's Fourth Amendment rights.

After showing the officer his hands, Branch consented to a search of the car. The Court also disagrees with the Magistrate Judge's finding that Branch was "arrested" at the time that Officer Charles asked Branch to get out of the car but before the officer found the cocaine. Branch had to get out of the car in order for the officer to conduct the consensual search. Thus, when Branch consented to a search of the car, he was necessarily consenting to getting out of the car. It is true that a reasonable person would not have felt free to leave after the officer escorted Branch to the rear of his car, told Branch to "stand there" and informed him he was being videotaped. Nevertheless, Branch consented to this degree of intrusion into his personal liberty when he consented to the search of the car.

Accordingly, for all the above reasons, Branch's Motion to Suppress (Rec. No. 13) is hereby DENIED. In addition to regular service by mail, a copy of this Order shall be transmitted forthwith to counsel of record by facsimile or by electronic filing.

This 9th day of August, 2005.



Signed By:

*Karen K. Caldwell* KKC

**United States District Judge**